IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID E. SMITH     PLAINTIFF

v.      Civil No. 08-5087

MICHAEL J. ASTRUE, Commissioner
Social Security Administration     DEFENDANT

## MEMORANDUM OPINION

Plaintiff, David Smith, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## Procedural Background

The plaintiff filed his applications for DIB and SSI on August 22, 2002, alleging an onset date of January 1, 2000, due to carpal tunnel syndrome; depression; and, pain in the shoulders, neck, and lower back. (Tr. 58, 81). His application was initially denied and that denial was upheld upon reconsideration. (Tr. 29, 32, 37). Plaintiff then made a request for a hearing before an Administrative Law Judge (ALJ). An administrative hearing was held on November 21, 2003. (Tr. 268-328). Plaintiff was present and represented by counsel.

At this time, plaintiff was 46 years of age and possessed an eleventh grade education. (Tr. 64, 278-279). He had past relevant work ("PRW") a tire alignment technician, mechanic, clerk, lube technician, and mechanic. (Tr. 57-66, 71-78, 280-28).

On May 25, 2004, the ALJ found that plaintiff had a combination of severe impairments, but he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 20). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to lift 10 pounds frequently and 20 pounds occasionally, as well as sit, stand, and walk for up to 6 hours in an 8 hour workday. (Tr. 16). In addition, the ALJ concluded that plaintiff was restricted to occasional fingering with his right hand, and limited to performing only simple one and two-step routine tasks and jobs with only incidental contact with the general public. (Tr. 20). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a housekeeper and janitor. (Tr. 21).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 28, 2008. (Tr. 4). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 7).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

**Discussion**

In the present case, plaintiff filed additional medical evidence with the Appeals Council, which was reviewed and considered prior to the issuance of the Council's determination. When "a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence

if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990). However, the timing of the evidence is not dispositive of whether the evidence is material. *Id.* Evidence obtained after an ALJ decision is material if it related to the claimant's condition on or before the date of the ALJ's decision. *Basinger v. Heckler*, 725 F.29 1166, 1169 (8th Cir. 1984).

Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g.*, *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir. 1992), and *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992). Of necessity, that means we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

The medical evidence before the ALJ at the time of his opinion showed that plaintiff was suffering from carpal tunnel syndrome with decreased strength in his left hand, degenerative /diskogenic disease, back and neck pain, headaches, and depression. Plaintiff submitted 52 additional pages of medical records for consideration before the Appeals Council. (Tr. 215-267). The pertinent records reveal as follows. On July 17, 2003, an MRI of plaintiff's cervical spine was performed. (Tr. 229-231). It revealed degenerative disk changes and facet arthropathy of the mid and lower cervical spine. These findings were compatible with myelomalacia of the

4

cervical cord extending from the C3-C6 levels, basilar invagination without significant mass effect on the medulla oblongata or posterior fossa structure. The findings were also consistent with a segmentation anomaly of the C7-T1 and T2 levels, a diffuse annulus bulge of the C3-4 levels with spinal canal stenosis, thinning of the cervical cord at the C3-4 and C4-5 levels, moderate neural foraminal narrowing on the right at the C3-4 level, moderate neural foraminal narrowing bilaterally of the C4-5 level, and right parasagittal disk protrusion of the C6-7 level resulting in moderate to severe right neural foraminal narrowing. (Tr. 229-231).

On October 28, 2003, plaintiff presented with a productive cough and blood pressure concerns. (Tr. 243). He had been to the ER and was prescribed a round of Erythromycin which had resulted in some improvement. However, he continued to have a moderately productive cough with copious green sputum. An examination revealed decreased breath sounds. The doctor diagnosed him with chronic obstructive pulmonary disease ("COPD") with bronchitis, Reynaud's disease, high blood pressure, and cervical disk disease. He was prescribed Amoxil, Prednisone, an Albuterol inhaler, and Soma. (Tr. 243).

On November 5, 2003, plaintiff complained of issues with his blood pressure. (Tr. 242). He also had thrush. He was diagnosed with hypertension, COPD, and smoking and prescribed stretching exercises, an Albuterol Inhaler, and Soma. (Tr. 242).

On January 29, 2004, plaintiff reported a home blood pressure reading of 150/90, which had decreased since taking Atenolol. (Tr. 246). The doctor advised him to continue the Atenolol and Soma. He then asked plaintiff to return in one month for a follow-up. (Tr. 246).

On May 19, 2004, plaintiff stated that the Hydrocodone dosage was no longer working. (Tr. 248). He complained of continued pain in his right hand and back pain. Plaintiff was

5

diagnosed with degenerative joint disease of the lumbar spine. He prescribed Hydrocodone. (Tr. 248).

On July 15, 2004, plaintiff complained of continued neck and back pain. (Tr. 239). Dr. Norys noted that an MRI had revealed spinal stenosis. He prescribed Soma. (Tr. 239).

On September 8, 2004, plaintiff reported a headache and elevated blood pressure. (Tr. 247). The doctor prescribed HCTZ, in addition to his other medications and asked him to return to the clinic in two weeks. (Tr. 247).

On October 6, 2004, plaintiff indicated that the Hydrocodone was irritating his stomach. (Tr. 249). The doctor opined that it could actually be the Tylenol upsetting his stomach. Therefore, he prescribed Ranitidine, Hydrocodone, and Soma. (Tr. 249).

On November 18, 2004, plaintiff continued to experience back pain. (Tr. 250). Dr. Norys diagnosed him with chronic neck and back pain secondary to discogenic disease. He prescribed Hydrocodone, Ibuprofen, and Soma. (Tr. 250).

On February 17, 2005, plaintiff complained of left hip pain, rating his pain as a 9 on a 10 point scale. ((Tr. 251-252). He also reported cervical pain and headaches. The doctor diagnosed him with hypertension, depression, and chronic back pain. He then prescribed Hydrocodone, ordered tests, and referred plaintiff to a neurosurgeon. (Tr. 251-252).

On December 23, 2004, plaintiff was treated for chronic pain, asthma, and hypertension. (Tr. 253). The doctor prescribed Prozac, Atenolol, and Motrin. (Tr. 253).

On February 21, 2005, an MRI of plaintiff's cervical spine revealed anomalous failure of segmentation of the C7-T3 levels resulting in relative immobility at the cervicothoracic junction placing accentuated degenerative stress on the adjacent mid-cervical and upper thoracic

6

disk levels. (Tr. 227-228). Cranial settling and deformity at the cranio-occipital junction with cephalad position of the odontoid process effacing the undersurface of the pons was also noted. (Tr. 227-228).

On September 6, 2006, plaintiff complained of blood pressure problems and back pain. (Tr. 254-255). He indicated that he had been off of blood pressure medication for approximately 1.5 years. Plaintiff also stated that he had not undergone lab work and never saw a neurosurgeon. The doctor prescribed Lisinopril and another generic medication. (Tr. 254).

On October 24, 2006, plaintiff reported significant back pain but "good" blood pressure readings with addition of medication. (Tr. 256). He also complained of dizzy spells and heart flutters. The doctor increased his HCTZ dosage and prescribed Verapamil. He also diagnosed him with degenerative joint disease and recommended exercises for his neck and shoulder. (Tr. 256).

On November 9. 2006, plaintiff complained of back, neck, and shoulder pain. (Tr. 257). He had previously been prescribed Hydrocodone. Plaintiff stated that he had recently moved a TV set and experienced dizziness and pain in his legs for 3 days. The doctor diagnosed him with controlled hypertension, degenerative joint disease, and gastrointestinal problems. He prescribed Hydrocodone. (Tr. 257).

On December 21, 2006, plaintiff had a follow-up appointment concerning a recent stroke. (Tr. 258). Records indicate he was admitted December 10, 2006, with left arm numbness and jerking. On December 15, plaintiff was said to have experienced left leg jerking and numbness. He was diagnosed with artherosclerotic cardiovascular disease and hypertension. Dr. Norys prescribed Stantin. He also added Lipitor on December 28, 2006. (Tr. 258).

On January 18, 2007, plaintiff had a follow-up appointment with Dr. Norys. (Tr. 223). The doctor diagnosed him with a cerebrovascular accident, upper extremity paresthesias, hypertension, elevated cholesterol, and chronic discogenic back pain. Clumsiness was also noted in his left hand. (Tr. 223).

This same date, Dr. James Norys completed a medical source statement. (Tr. 219-221). He indicated that plaintiff could lift less than 10 pounds frequently, 10 pounds occasionally, and stand and/or walk 1 hour. Dr. Norys also indicated that plaintiff would need 1 to 2 work/bathroom breaks, should lay in a supine position for 1 hour per day, and could only perform work activities in a normal workday for 1 hour based upon the totality of his symptoms in combination with medication side effects. Dr. Norys stated that this assessment was supported by his history of stroke and discogenic back pain. He then indicated that plaintiff could climb, kneel, and crouch for less than 2 hours in and 8-hour day; balance, reach in all directions, handle, finger, grip, and feel for 2 hours; would experience moderate limitations regarding humidity, noise, vibration, fumes, odors, and dusts; and, should avoid all exposure to extreme cold, extreme heat, wetness, gasses, poor ventilation, and hazards. Again, he stated that these limitations were supported by plaintiff's history of stroke (supported by a CT scan) and back degeneration by MRI. (Tr. 219-221). On a physical RFC assessment form, Dr. Norys indicated that plaintiff could not sit for 6 hours, could not sit/stand/walk in combination for 8 hours, could not perform part-time work activities of any nature for more than 10 hours in a 40 hour work-week, required 4 or more unscheduled work breaks in an 8 hour workday due to physical restrictions, had significant limitations in the ability to reach/push/pull bilaterally in the upper

extremities, and had significant limitations in his ability to handle and work with small objects with both hands. (Tr. 222).

In August 2007, Dr. Van Ore completed a physical RFC assessment of plaintiff. (Tr. 262-265). He determined that plaintiff could frequently lift less than 10 pounds, occasionally lift less than 10 pounds, and stand/walk and sit for 1 hour during an 8-hour workday. He also indicated that plaintiff would need 3 or 4 work breaks or bathroom breaks per day and was unable to feel his left leg and left hand. Dr. Van Ore also stated that plaintiff's lower extremities were weak and that he was unable to do much climbing, balancing, squatting, kneeling, crouching, and bending due to neck pain and dizzy spells. He stated that plaintiff should avoid concentrated exposure to hazards such as machinery or heights. (Tr. 262-265).

This same date, Dr. Van Ore completed a mental RFC assessment. (Tr. 266-267). He diagnosed plaintiff with agoraphobia. (Tr. 266-267).

Given plaintiff's medical history and the aforementioned evidence submitted to the Appeals Council, we believe that this matter should be remanded to the ALJ for further consideration. It is clear that the RFC assessments from plaintiff's treating doctors indicate that plaintiff was capable of performing a lighter level of work than the ALJ determined.[1] Therefore, we believe, had this evidence been before the ALJ, it would have impacted his decision.

---

[1] On November 12, 2003, Dr. Floyd completed a medical source statement. (Tr. 190-192, 241). He indicated that plaintiff could frequently lift 10 pounds, occasionally lift less than 10 pounds, stand and/or walk for 2 hours, and sit for 3 hours. He also noted limitations in plaintiff's upper and lower extremities. Further, he stated that plaintiff had reactive lung disease and would need environmental restrictions. (Tr. 190-192). This was before the ALJ at the time he rendered his opinion.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 4th day of May 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)